**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| NUKOTE OF ILLINOIS, INC., | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | Civil Action No.: |
| CLOVER HOLDINGS, INC. AND CLOVER TECHNOLOGIES GROUP, LLC, | § § § | |
| *Defendants*. | § | |

---

**NOTICE OF REMOVAL**

---

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL & PROCEDURAL BACKGROUND ...............................................2

    A.    Citizenship Of The Parties To The Controversy.........................................2

    B.    Nukote, Inc. Loses Its Biggest Customer And Files For Chapter 11
        Bankruptcy..................................................................................................3

    C.    Nukote, Inc. Sues Office Depot .................................................................3

    D.    During The Nukote Bankruptcy, Nukote, Inc. Investigated The Claims
        Now Asserted Against Defendants, And Listed Those Claims Among
        Nukote, Inc.'s Principal Assets..................................................................4

    E.    Nukote, Inc. Emerges From Bankruptcy As The Owner Of The Alleged
        Claims Against Defendants.........................................................................4

    F.    Nukote, Inc.'s Directors Form Nukote Of Illinois And, Two Days Later,
        Sue Defendants In Texas State Court .........................................................5

III.  REMOVAL IS PROPER BECAUSE NUKOTE OF ILLINOIS' CITIZENSHIP
    SHOULD BE DISREGARDED FOR PURPOSES OF DETERMINING THE
    COURT'S JURISDICTION ................................................................................7

    A.    Nukote Of Illinois Is Not The Real And Substantial Party To The
        Controversy With Defendants.....................................................................8

    B.    Nukote Of Illinois And Its Claims Were Improperly Joined To Destroy
        Diversity Jurisdiction ...............................................................................11

        1.    Nukote of Illinois pled facts it knew could not possibly be true ...............12

        2.    Nukote of Illinois' claims are baseless in law and fact.............................13

    C.    Any Purported Assignment Of Claims Against Defendants From Nukote,
        Inc. To Nukote Of Illinois Should Be Disregarded For Jurisdictional
        Purposes ...................................................................................................14

        1.    Plaintiff's counsel has filed previous suits in the Texas state courts
            based on corporate actions that precluded diversity ..................................14

        2.    If there was an assignment, the Court must consider the underlying
            motives that led to the formation of Nukote of Illinois and the
            subsequent assignment ..............................................................................16

IV.   THE AMOUNT IN CONTROVERSY EXCEEDS $75,000 ............................18

V.    REMOVAL IS TIMELY ...................................................................................18

VI.   ALL DEFENDANTS CONSENT TO REMOVAL ..........................................18

VII.  STATE COURT PLEADINGS ARE ATTACHED...........................................18

VIII. NOTICE OF REMOVAL HAS BEEN GIVEN TO THE STATE COURT ....18

TO THE HONORABLE COURT:

Defendants Clover Holdings, Inc. ("Clover Holdings") and Clover Technologies Group, LLC ("Clover Technologies" and, collectively with Clover Holdings, "Defendants") file this Notice of Removal pursuant to Article III, § 2 of the United States Constitution, 28 U.S.C. §§ 1332, 1441, and 1446 on the following grounds:

## I.    INTRODUCTION

The Original Petition ("Complaint") filed by Plaintiff Nukote of Illinois, Inc. ("Plaintiff" or "Nukote of Illinois") creates the impression that this case is between three Illinois companies arising out of a dispute that began nearly a year ago.  This is not only not true, it is impossible. Indeed, Nukote of Illinois did not even *exist* when the facts alleged in the Complaint occurred; instead, it was created only two days before the Complaint was filed.  To create this false impression, Plaintiff uses misleading shorthand, referring to Nukote of Illinois, Inc. as simply "Nukote."  By using this shorthand, Plaintiff's Complaint collapses two separate, but closely related, companies—Nukote of Illinois and Nukote, Inc. (which was itself known as Nukote International, Inc. until emerging from bankruptcy late last year)—into one to hide the fact that Nukote of Illinois is now attempting to assert claims that can properly be brought only by Nukote, Inc.

Nukote of Illinois does all of this to create the illusion that the parties to the claims at issue in this case are non-diverse.   Looking past that illusion, however, demonstrates that the newly formed Nukote of Illinois is little more than a subversive device being used to manipulate this Court's jurisdiction.  Because Plaintiff's scheme should not be allowed to stand, this Court should now exercise diversity jurisdiction over this litigation pursuant to 28 U.S.C. § 1332.

## II.     FACTUAL & PROCEDURAL BACKGROUND.

### A.     Citizenship Of The Parties To The Controversy.

Nominal plaintiff Nukote of Illinois is an Illinois corporation formed, on an expedited basis, on February 24, 2010, by directors of Nukote, Inc.  (App. at 5, Ex. 1, Complaint "Compl." ¶ 1; App. at 22-24, Ex. 2, Articles of Incorporation.)[1]  Nukote, Inc., however, is the real party to this controversy.  Unlike the jurisdictional device that is Nukote of Illinois, Nukote, Inc., which until emerging from bankruptcy on February 17, 2010, was known as Nukote International, Inc.,[2] is a Delaware corporation formed in 1986 that now has its principal place of business in Texas. (App. at 27, Ex. 3a, Certificate of Incorporation; App. at 50, Ex. 3g, Certificate of Amendment; App. at 72, Ex. 4, Disclosure Statement for the Plan of Reorganization for Nukote ("Discl. Stmt.").)  For the reasons stated herein, the Court should disregard the citizenship of Plaintiff Nukote of Illinois, and instead consider Nukote, Inc.'s Delaware and Texas citizenship for purposes of diversity jurisdiction.

Defendant Clover Holdings is an Illinois corporation with its principal place of business in Illinois.  (App. at  5, Ex. 1, Compl. ¶ 2)  Defendant Clover Technologies is an Illinois limited liability company with its principal place of business in Illinois.  (*Id.* at 6, ¶ 3.)  Clover Holdings

---

[1] Pursuant to  Local Rule 81.1 of the United States District Court for the Northern District of Texas, Clover has attached the following documents to this Notice of Removal:  Attachment 1, an index of all documents filed in the state court; Attachment 2 a copy of the docket sheet in the state court action; Attachment 3, a copy of all process, pleadings, and orders served upon Clover and each document filed in the state court action, Attachment 4, a copy of the notice of this Notice of Removal provided to the State Court, and Attachment 5, Defendants' Certificate of Interested Parties.  Clover is also filing contemporaneously with this Notice of Removal a separate Appendix containing all of the Exhibits cited herein.  All citations to "App." are to the Appendix.  All citations to "Ex." refer to Exhibits included in the Appendix.  Finally, all emphasis in the text has been added by Clover unless otherwise noted.

[2] To minimize the possibility of further confusion regarding the Nukote entities, throughout this Notice, Nukote, Inc. and Nukote International, Inc. are referred to by the entity's current name, Nukote, Inc.

is the only member of Clover Technologies, meaning both defendants are Illinois citizens for purposes of diversity jurisdiction.

### B.     Nukote, Inc. Loses Its Biggest Customer And Files For Chapter 11 Bankruptcy.

In the Spring of 2009, Nukote, Inc. lost its biggest customer, Office Depot. (*See* App. at 8, Ex. 1, Compl. ¶ 15; App. at 68-69 & 76-77, Ex. 4, Discl. Stmt.)  Following the loss of Office Depot's business, in June 2009, Nukote, Inc. and some of its affiliates filed for Chapter 11 bankruptcy ("the Nukote Bankruptcy"). (App. at 119-25, Ex. 5, Voluntary Petition, *In re Nukote Int'l, Inc.*, Bankr. 09-06240 (Bankr. M.D. Tenn. June 3, 2009) (Dkt. #1).)  Nukote Inc. had and has its "corporate headquarters located in Plano, Texas." (App. at 72, Ex. 4, Discl. Stmt.)  Nukote, Inc. and its affiliates "operate as a single economic and business unit . . . under a centralized accounting system, with all books and records kept . . . in Franklin, Tennessee until 2006, Rochester, New York from 2006-2008, and Plano, Texas currently." (*Id.* at 71.)[3]

### C.     Nukote, Inc. Sues Office Depot.

During its bankruptcy, Nukote, Inc. filed an adversary proceeding against Office Depot arising out of Office Depot's decision to end its relationship with Nukote, Inc. (*See* App. at 127-49, Ex. 6, Complaint in *Nukote Int'l, Inc. v. Office Depot, Inc.*, Adv. No. 09-00341 (Bankr. M.D. Tenn. Sept. 8, 2009).)  Describing why it brought those claims, Nukote, Inc. disclosed that it sued Office Depot because "[o]n May 8, 2009, Office Depot abruptly and without notice

---

[3]  The documents filed in the bankruptcy proceeding use the term "Nukote" broadly to include Nukote, Inc. and its affiliates. (App. at 67, Ex. 4, Discl. Stmt.)  Obviously, Nukote of Illinois was not included in that broad definition, because it did not exist at the time.  Further, the bankruptcy record indicates that Nukote, Inc. was the "operating entity." (*Id.* at 71.)

announced that it had appointed a new vendor, Clover Technologies Group, LLC, for the

products provided by Nukote . . . ."  (App. at 76, Ex. 4, Discl. Stmt.)[4]

> **D.     During The Nukote Bankruptcy, Nukote, Inc. Investigated The Claims Now Asserted Against Defendants, And Listed Those Claims Among Nukote, Inc.'s Principal Assets.**

In the Nukote Bankruptcy, Nukote, Inc. disclosed potential "claims against certain

competitors for tortious interference with its business and contractual relationships" as part of

Nukote, Inc.'s "principal assets."  (App. at 74, 77, Ex. 4, Discl. Stmt.)  Specifically, Nukote, Inc.

disclosed that it was "investigating claims against Clover Technologies, Group, Inc. ("Clover")

for tortious interference with Nukote's contract with [Office Depot]."  (*Id.* at 77.)  Nukote, Inc.

also disclosed that it believed "Clover may have utilized improperly obtained confidential

information about Nukote" by hiring former Nukote, Inc. employees.  (*Id.* at 78.)  To investigate

its beliefs, Nukote, Inc. took a Rule 2004 Examination of Clover Holdings' chief executive

officer, James Cerkleski, during the bankruptcy proceedings.  (*See* App. at 153-61, Ex. 8, Order

Directing Examination Pursuant to Fed. R. Bank. P. 2004, *In re Nukote Int'l, Inc.*, Bankr. 09-

06240, (Bankr. M.D. Tenn. Jan. 4, 2010) (Dkt. # 337).)

> **E.     Nukote, Inc. Emerges From Bankruptcy As The Owner Of The Alleged Claims Against Defendants.**

The bankruptcy plan of reorganization provided Nukote, Inc. would own all the stock or

assets of all related debtors, and would continue to operate as it had before and during its

bankruptcy.  (App. at 90-92; Ex. 4, Discl. Stmt.)  The directors of Nukote, Inc. are John Rochon,

William John Philip Rochon, Nick G. Bouras, and Alan Lockwood.  (*Id.* at 92-93.)  Nukote, Inc.

---

[4] The reference to the bankruptcy court was withdrawn in the Office Depot litigation and it was eventually transferred to the District Court for the Southern District of Florida, where Office Depot has filed a motion to dismiss that has been fully briefed, but not yet decided.  *See Nukote Int'l, Inc. v. Office Depot, Inc.*, 09-CV-82363-DTKH (S.D. Fla. 2009).

continues to be a Delaware Corporation.  (App. at 54-55, Ex. 3i, Certificate of Amendment of Certificate of Incorporation.)  Importantly, when it emerged from bankruptcy on February 17, 2010, Nukote Inc. owned the alleged claims against Defendants.  (*See* App. at 163-66, Ex. 9, Notice of Occurrence of Effective Date for First Amended Joint Plan of Reorganization for Nukote, as Modified, *In re Nukote Int'l, Inc.*, Bankr. 09-06240, (M.D. Tenn. Jan. 4, 2010) (Dkt. # 528).)

### F.    Nukote, Inc.'s Directors Form Nukote Of Illinois And, Two Days Later, Sue Defendants In Texas State Court.

On February 24, 2010, just one week after Nukote, Inc. emerged from bankruptcy, Plaintiff Nukote of Illinois was incorporated in Illinois, on an expedited basis.  (App. at 22-24, Ex. 2, Articles of Incorporation.)  According to Nukote of Illinois' articles of incorporation, its directors are William John Philip Rochon, also a member of the Nukote, Inc. board of directors, and Alan Lockwood, Nukote, Inc.'s Senior Vice President, General Counsel, and Secretary.  (*Id.*; App. at 92-93, Ex. 4, Discl. Stmt.)

On February 26, 2010, two days later, the newly formed Nukote of Illinois sued Defendants in the District Court of Dallas County, Texas, asserting claims that mirror those investigated during the Nukote bankruptcy and which the plan provided would be owned by Nukote, Inc.  Nukote of Illinois claims, *inter alia*, that Defendants allegedly tortiously interfered in a purported contract between Nukote of Illinois and Office Depot, (*see* App. at 8-11, Ex. 1, Compl. ¶¶ 15-18, 26, 31-35), and that Defendants allegedly misappropriated confidential information and contributed to breaches of fiduciary duty by hiring Nukote of Illinois' employees, (*see id.* at 8-10, 12, 14, Ex. 1, Compl. ¶¶ 14, 17, 26, 37-39, 43, 51-54).  These are exactly the same claims discussed and investigated during the bankruptcy proceedings by *Nukote, Inc.*  (App. at 77-78, Ex. 4, Discl. Stmt.)

In bringing these claims, Nukote of Illinois made a number of misrepresentations as to its history and business activities.  Indeed, the Complaint makes the following allegations, none of which could possibly be true for a two-day old company:

- Nukote of Illinois "established itself" in the office supply industry  "[o]ver more than a century."  (App. at 4, Ex. 1, Compl. § II.)

- Nukote of Illinois' print supplies "first entered the marketplace" in 1964.  (*Id.*)

- Nukote of Illinois was the "largest manufacturer and supplier of 3,000 high-quality, aftermarket imaging supply products" by 2003. (*Id.* at 5, Ex. 1, Compl. § II.)

- "For the last ten years," Defendants have been Nukote of Illinois' largest competitor. (*Id.* at 7, Ex. 1, Compl. ¶ 9.)

- "Over the course of more than a year" Defendants pursued a merger with Nukote of Illinois.  (*Id.* at 8, Ex. 1, Compl. ¶ 12.)

- Nukote of Illinois' employees were hired away by Defendants.  (*Id.* at 8, Ex. 1, Compl. ¶ 14.)

- Nukote of Illinois lost its largest customer, Office Depot, to Defendants.  (*Id.* at 8, Ex. 1, Compl. ¶ 15.)

- Nukote of Illinois "had been in an exclusive relationship" with Office Depot "for many years."  (*Id.*)

- After losing the Office Depot account, Nukote of Illinois "had no choice but to file for Chapter 11."  (*Id.* at 9, Ex. 1, Compl. ¶ 20.)

- Nukote of Illinois "has recently emerged from bankruptcy."  (*Id.* at 9, Ex. 1, Compl. ¶21.)[5]

These allegations make it clear that the Complaint seeks to prevent a federal court from having jurisdiction by having Nukote of Illinois assert claims that can properly be pursued by the real and substantial party to the controversy—Nukote, Inc.

---

[5] Though it is not procedurally time to do so, at the appropriate time in this litigation Defendants will demonstrate that none of the allegations that Defendants engaged in any wrongdoing are true.

III.   **REMOVAL IS PROPER BECAUSE NUKOTE OF ILLINOIS' CITIZENSHIP SHOULD BE DISREGARDED FOR PURPOSES OF DETERMINING THE COURT'S JURISDICTION.**

"Congress has created diversity jurisdiction and the right of removal under 28 U.S.C. § 1441 for the purpose of protecting non-resident litigants from local prejudice." *Grassi v. Civa-Geigy*, 894 F.2d 181, 185 (5th Cir. 1990).   "[I]t would flout that transparent intent to allow plaintiffs, through a 'cynical device . . . to benefit from whatever local prejudice a trial against a foreign corporation before a [local] jury might afford them.'" *Douglas Energy of N.Y., Inc. v. Mobil Oil Corp.*, 585 F. Supp. 546, 548 (D. Kan. 1985) (quoting *Gentle v. Lamb-Weston, Inc.*, 302 F. Supp. 161 (D. Me. 1969)).   "The plaintiff who chooses to sue a non-citizen defendant in a state court may be motivated by the hope that the out-of-state defendant will be at a substantial disadvantage in that court and the likelihood of such motivation increases with the lengths to which the plaintiff will go to prevent removal to a federal forum." *Id.*   Thus, the need for the right of removal "may well be greatest when the plaintiff tries hardest to defeat it." *Grassi*, 894 F.2d at 185.

Here, by incorporating itself on an expedited basis and then bringing claims that it does not appear to have any right to bring, Nukote of Illinois has gone to extraordinary lengths in an obvious and deliberate attempt to defeat diversity jurisdiction.   Nukote of Illinois' efforts, however, should be disregarded for three distinct reasons, any one of which is alone enough to disregard Nukote of Illinois' citizenship:   *First*, Nukote of Illinois is not the real and substantial party to the controversy for diversity purposes; instead, every publicly available document suggests Nukote, Inc. is.   *Second*, Nukote of Illinois and its claims have been improperly joined to defeat diversity.   *Third*, any transactions intended to clothe Nukote of Illinois as the proper party should not be considered in determining whether the Court can properly exercise diversity jurisdiction over this litigation.   Given these reasons, this Court has subject matter jurisdiction

pursuant to 28 U.S.C. § 1332 because the real parties to the controversy are diverse.  As a result,

Defendants' removal is proper pursuant to 28 U.S.C. § 1441 and § 1446.

> ### A.      Nukote Of Illinois Is Not The Real And Substantial Party To The Controversy With Defendants.

Federal courts have diversity jurisdiction over controversies between "citizens of

different states."  28 U.S.C. § 1332(a)(1); U.S. Const. art III, § 2.  For purposes of diversity

jurisdiction, the "citizens" in questions are confined to those who are the "real and substantial

parties to the controversy."  *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003).

"Thus a federal court must disregard nominal or formal parties and rest jurisdiction only upon

the citizenship of real parties to the controversy."  *Id.*  Indeed, the Supreme Court has held that

"the mere presence on the record of [a non-diverse party] as a party plaintiff, will not defeat the

jurisdiction of the Federal court when it appears that the [non-diverse party] has no real interest

in the controversy."  *Ex parte Nebraska*, 209 U.S. 436, 444, 28 S. Ct. 581, 52 L. Ed. 876 (1908).

Further, as the Supreme Court has held, federal courts have an affirmative obligation to look

beyond the pleadings to determine whether the nominal plaintiff is the real party, or merely a

tool to defeat diversity "by consideration of the nature of the case as presented by the whole

record."  *Id.* at 444-45.  Applying these standards, district courts have disregarded non-diverse,

sham plaintiffs and exercised diversity jurisdiction in cases where the whole record of the case

showed the real parties to controversy were diverse.  *See e.g.*, *Phoenix Mut. Life Ins. Co. v.*

*England*, 22 F. Supp. 284, 285-86 (W.D. Mo. 1938) (following *Nebraska* to look at motives

underlying sham plaintiff's "obvious and apparent" attempt to destroy diversity); *Gentle*, 302 F.

Supp. at 165 (disregarding citizenship of sham plaintiff and citing *Nebraska* for the proposition

that the Supreme Court "has condemned similar practices in a way which makes it clear that the

federal courts should be alert to protect their jurisdiction against cleverly-designed maneuvers designed by ingenious counsel to defeat it").

Here, the whole record, including both the allegations of the Complaint and publicly available documents, shows that the real party to this controversy is Nukote, Inc. Despite this, Nukote of Illinois purports to pursue claims that were assets of the bankruptcy estate of Nukote, Inc., (App. at 77-78, Ex. 4. Discl. Stmt.), without including any colorable basis for it to assert those claims in its Complaint. Thus, Nukote of Illinois is a mere nominal plaintiff whose *raison d'être* is to serve as Nukote, Inc.'s instrument in an "obvious and apparent" attempt to defeat this Court's diversity jurisdiction. *Nebraska*, 209 U.S. at 444; *Phoenix*, 22 F. Supp. at 286.

Because of this, Nukote of Illinois' citizenship should not be regarded in determining whether this court can exercise diversity jurisdiction. Instead, it is only the real party—Nukote, Inc.—that should be considered. And because Nukote, Inc. is a citizen of Delaware and Texas, it is diverse to Clover Holdings and Clover Technologies, which are both Illinois citizens.

This conclusion is confirmed by the "close relationship" that exists between Nukote of Illinois and Nukote, Inc. During the Nukote Bankruptcy, Nukote, Inc. made clear that the "Nukote" corporate family "operate[s] as a *single economic and business unit*." (App. at 71, Ex. 4 Discl. Stmt.) Given that it bears the same corporate family name and was incorporated by Nukote, Inc. directors, Nukote of Illinois appears to be part of that same corporate family. Circumstances like these "necessarily present[] opportunities" for collusive manipulation of diversity jurisdiction and so, when "both corporate forms" are controlled by the same persons, federal courts have employed a rebuttable presumption that disregards the citizenship of a nominal plaintiff for diversity purposes. *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546

F.2d 469, 475-76 (2d Cir. 1976); *see also Yokeno v. Mafnas*, 973 F.2d 803, 809-10 (9th Cir. 1992); *Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640, 643-44 (1st Cir. 1995).

That presumption should apply in this case, as the record reveals a very close relationship between nominal plaintiff Nukote of Illinois and Nukote, Inc. All of Nukote of Illinois' directors are also directors of Nukote, Inc., (App. at 24, Ex. 2, Articles of Incorporation; App. at 92-93, Ex. 4, Discl. Stmt.), meaning the same persons control both corporations. This creates a situation ripe for collusive manipulation of diversity jurisdiction, meaning the presumption should be that the Court disregard Nukote of Illinois' citizenship for diversity purposes. *Prudential Oil*, 546 F.2d at 475-76.

The timing of the formation of Nukote of Illinois also suggests that Nukote of Illinois is nothing more than a sham plaintiff. In *Grassi*, the Fifth Circuit considered a transaction occurring "shortly before the suit was filed" that supposedly transferred claims to a nominal plaintiff as indicative of improper collusion. 894 F.2d at 186; *see also Douglas Energy*, 585 F. Supp. at 547 n.2 (disregarding citizenship of nominal plaintiff which was incorporated "a few days" before filing suit). Nukote of Illinois' expedited formation just two days before it brought this suit is particularly suspect since Nukote, Inc. had so recently re-organized itself during the Nukote Bankruptcy. During that complete reorganization of the Nukote, Inc. enterprise, no Illinois-based entities were created, nor was there any suggestion of any reason to do so. If there was a legitimate business reason for the formation of an Illinois entity, it likely would have been undertaken during the reorganization. Instead, the formation of Nukote of Illinois did not occur until *after* the bankruptcy court had finished its scrutiny of the reorganization, suggesting all the more that Nukote of Illinois' only business activity is the prosecution of this lawsuit.

**B.     Nukote Of Illinois And Its Claims Were Improperly Joined To Destroy Diversity Jurisdiction.**

Even though Nukote of Illinois was incorporated just before this litigation was brought and Nukote, Inc. is now pursuing similar claims against Office Depot, the Complaint includes no allegations whatsoever suggesting that Nukote of Illinois is an appropriate party to pursue any of the claims asserted against Defendants.   Indeed, to the contrary the Complaint's allegations misleadingly suggest that Nukote of Illinois is the entity that actually experienced the events alleged in the Complaint even though it did not exist when those events occurred.  (*See* App. at 4, Ex. 1, Compl. (defining "Nukote" to refer to Nukote of Illinois).)   And because Nukote of Illinois did this seemingly to destroy diversity jurisdiction, Nukote of Illinois and its claims have been improperly joined.[6]

This is not an ordinary case involving improper joinder of a *defendant*.   That the improperly joined party here is the *plaintiff*, though, does not make Nukote of Illinois' inclusion in this litigation any less improper.  Indeed, "[t]he Fifth Circuit has not confined its application of the fraudulent joinder doctrine to fraudulently joined defendants, but has extended the doctrine to *fraudulently joined claims*." *Elk Corp. of Tex. v. Valmet Sandy-Hill, Inc.*, No. 99-CV-2298G, 2000 WL 303637, at *2 (N.D. Tex. Mar. 22, 2000) (citing *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993).  Thus, "defendants are permitted to demonstrate that parties—*or claims*—are baseless in law and fact and serve only to frustrate federal jurisdiction." *Lackey*, 990 F.2d at 207 (quotation omitted).   As a result, courts in this district have held that "[t]he fraudulent joinder doctrine can be applied to the alleged fraudulent joinder of a plaintiff." *Miller v. Giesecke & Devrient America, Inc.*, No. 06-CV-1466 & 06-CV-2386, 2007 WL 518557, at *2

---

[6] While some courts refer to the doctrine of "fraudulent joinder," the Fifth Circuit has noted its preference for the term "improper joinder."  *Smallwood v. Illinois Cent. R.R.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004).

<u>NOTICE OF REMOVAL</u>                                    - 11 -
243287

(N.D. Tex. Feb. 20, 2007) (collecting cases); *Elk*, 2000 WL 303637, at *2 ("the fraudulent joinder doctrine may be applied where a defendant claims that a plaintiff has been fraudulently joined"); *see also Picquet v. Amoco Prod. Co.*, 513 F. Supp. 938, 943 (M.D. La. 1981) (stating that "a federal district court ought to inquire into improper or fraudulent joinder of plaintiffs as well as improper or fraudulent joinder of defendants where the motive is to defeat federal jurisdiction").

Improper joinder may be established in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action in state court." *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005).  In assessing these two ways, the Fifth Circuit has "expressly authorized consideration of evidence outside the pleadings." *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990), *cert. denied*, 498 U.S. 817 (1990).  Here, the record shows that Nukote of Illinois fraudulently pled jurisdictional facts and has no basis in law or fact for its claims against Defendants.

## 1.    Nukote of Illinois pled facts it knew could not possibly be true.

Though the Fifth Circuit has provided little guidance on the first of the two ways to establish improper joinder, *Crawford v. Charles Schwab & Co.*, No. 09-CV-0666, 2009 WL 3573658, at *2 n.2 (N.D. Tex. Oct. 30, 2009), courts in the Fifth Circuit have held that "the pleading of jurisdictional facts can encompass other facts proximately leading to jurisdictional concerns." *Rodriguez v. Casa Chapa S.A.*, 394 F. Supp. 2d 901, 906, 907 (N.D. Tex. 2005); *see also Boone*, 416 F.3d at 388 (interpreting the test expansively by looking for "fraud in the drafting of the complaint").  Specifically, "[l]ying to establish a putative party as a 'strawman' to defeat jurisdiction is a jurisdictional issue contained within the pleadings." *Rodriguez*, 394 F. Supp. 2d at 907-08.

Here, in support of its effort to avoid the Court's jurisdiction, Nukote of Illinois falsely alleges numerous facts that lead to jurisdictional concerns.  As discussed above, two-day old Nukote of Illinois alleged in its Complaint, *inter alia*, that it had been in existence for decades; had an exclusive relationship with Office Depot "for many years"; was the "largest manufacturer and supplier of 3,000 high-quality, aftermarket imaging supply products" by 2003; was in competition with Defendants "[f]or the last ten years"; was pursued by Defendants for a potential merger "[o]ver the course of more than a year"; had lost its largest customer, Office Depot,  to Defendants; filed for Chapter 11 bankruptcy; and "has recently emerged from bankruptcy." (App. at 4-5, 7-9, Ex. 1, Compl. at 1-2, § II & ¶¶ 9, 12, 14-15, 21.)  Each of these allegations is impossible given that Nukote of Illinois did not exist prior to February 24, 2010.  (App. at 23, Ex. 2, Articles of Incorporation.)  To the contrary, the record shows that these allegations could have been made only by Nukote, Inc., which further demonstrates the Complaint was drafted with an eye to establishing Nukote of Illinois "as a 'strawman' to defeat jurisdiction." *Rodriguez*, 394 F. Supp. 2d at 907-08; *see also Prudential Oil*, 546 F.2d at 475-76 (applying presumption of collusion by related companies to manipulate diversity).

### 2.     Nukote of Illinois' claims are baseless in law and fact.

Additionally, Nukote of Illinois' claims against Defendants are "baseless in law and fact and serve only to frustrate federal jurisdiction." *Lackey*, 990 F.2d at 207; *see also Carriere*, 893 F.2d at 100 (court may consider "evidence outside the pleadings").  The Nukote Bankruptcy established that the claims asserted in the Complaint are owned by Nukote, Inc.  (App. at 77-78, 92, Ex. 4, Discl. Stmt.)  The Complaint does not contain any basis for Nukote of Illinois, rather than Nukote, Inc. to assert those claims.  Thus, because it cannot establish a cause of action against Defendants in the state court, Nukote of Illinois and its claims have been improperly joined in this litigation.  *See Boone*, 416 F.3d at 388.

**C.** **Any Purported Assignment Of Claims Against Defendants From Nukote, Inc. To Nukote Of Illinois Should Be Disregarded For Jurisdictional Purposes.**

As discussed above, the Complaint does not allege any basis for Nukote of Illinois to assert claims against Defendants. Given the timing of its incorporation and Plaintiff's counsel's familiarity with the issues raised by Plaintiff's recent incorporation, though, it is possible that Nukote, Inc. assigned its alleged claims against Defendants to Nukote of Illinois during the less-than-forty-eight hour period between its formation and the filing of this litigation. If Nukote, Inc. made such an assignment, however, it would constitute an invalid sham transaction designed to destroy diversity jurisdiction, and therefore should be disregarded.

**1.** **Plaintiff's counsel has filed previous suits in the Texas state courts based on corporate actions that precluded diversity.**

As noted earlier, this is not the first lawsuit involving corporate actions apparently designed to prevent diversity jurisdiction to be removed to the Northern District of Texas. It is also not the first time Plaintiff's counsel has been the lawyer for the plaintiff in such a suit. Although those earlier cases are significantly different than this one, the court may consider counsel's involvement in those cases as evidence of the collusive nature of the present case. *Cf. Phoenix Mutual*, 22 F. Supp. at 285 (considering nominal plaintiff's involvement in other sham transactions designed to destroy diversity).

In 2004, Plaintiff's counsel Thomas Melsheimer and Victor Johnson filed a lawsuit in Texas state court on behalf of a plaintiff corporation that was formed less than a month before initiating the suit. *Amalgamated Gadget, L.P. v. Mack*, 2004 U.S. Dist. LEXIS 4170, at *1, 4 (N.D. Tex. Feb. 10, 2004). In *Amalgamated*, the party who originally owned the causes of action against the defendants assigned the claims to the newly incorporated plaintiff. As a result, the court focused on the assignment, and only lightly touched on the improper joinder issue, perhaps

because the defendant did not raise it in the notice of removal.  Further, because the plaintiff

argued that the defendants had not shown any evidence of improper joinder, and had not even

sought discovery on the issue, the defendants could not establish the "close relationship"

between the newly incorporated assignee and the assignor that might have justified a

presumption of collusion.

Here, by contrast, Defendants have expressly raised the issue of improper joinder and,

should it be necessary, will seek discovery on that issue, as well as the relationship between

Nukote of Illinois and Nukote, Inc.[7]  Additionally, as discussed above, Defendants have already

demonstrated through publicly available documents that Nukote of Illinois is improperly joined

and stands in a very close relationship with Nukote, Inc., the real party to the controversy.  These

facts make this case different from *Amalgamated* in important and significant ways.

In 2008, Plaintiff's counsel Thomas Melsheimer and Geoffrey Harper filed another

lawsuit in Texas state court, *HDNet MMA 2008 LLC v. Zuffa, LLC*, No. 08CV0442, 2008 WL

958067 (N.D. Tex. Apr. 9, 2008), in which the defendant argued there had been corporate

maneuvering designed to destroy diversity.  *HDNet*, however, is also distinguishable because

"the plaintiff entity was created before any claims accrued."  *Id.* at *4.  As a result, though the

court recognized that it was not dealing with an assignment case, it nevertheless employed an

assignment-type analysis to look beyond the pleadings and consider the motive for the diversity-

destroying transaction.  *Id.* at *5.  In this examination, the court acknowledged that "[t]he timing

---

[7] The Fifth Circuit has authorized "piercing the pleadings" in a summary-judgment like procedure to resolve
questions of improper joinder in which the defendant may "submit affidavits and deposition transcripts."  *Carriere,*
893 F.2d at 100; *see also Elk*, 2000 WL 303637, at *1 (court may look beyond the pleadings to resolve improper
joinder). Defendants, therefore, reserve the right, should it be necessary, to take remand-related discovery, and to
present evidence in support of this Notice of Removal by way of affidavits, declarations, oral testimony, or other
forms of evidentiary materials.  Clover also reserves the right to supplement or amend this Notice of Removal and to
present additional arguments in support of its right to remove this action.

and circumstances surrounding the formation of the [non-diverse plaintiff] presents circumstantial evidence of collusive manipulation," but observed that "the plaintiff was also influenced by other factors unrelated to jurisdiction" which suggested a legitimate reason for the incorporation in the defendant's home state. *Id.* (quotation omitted).

Unlike the facts in *HDNet*, Nukote of Illinois was not created before the claims it asserts accrued. The record conclusively establishes that Nukote, Inc., a different—but closely related—entity, knew of and owned the claims long before Nukote of Illinois was formed. The timing and circumstances of the formation of Nukote of Illinois are evidence of collusive manipulation, and nothing in the record discloses any legitimate reason for Nukote of Illinois to have been formed in Defendants' home state a mere two days before filing this lawsuit.

> **2.      If there was an assignment, the Court must consider the underlying motives that led to the formation of Nukote of Illinois and the subsequent assignment.**

As the court in *HDNet* observed, when faced with an assignment of claims that has the effect of destroying diversity, federal courts should look beyond the pleadings to consider the motives for the transaction. Indeed, the Supreme Court has held that an assignment might be valid under state law and yet be considered "improper or collusively made" for purposes of diversity jurisdiction. *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 829, 89 S. Ct. 1487, 23 L. Ed. 2d 9 (1969). Although *Kramer* addressed a plaintiff's efforts to create, rather than destroy diversity jurisdiction, the Fifth Circuit has stated that *Kramer* "has been seen as a significant departure from the Court's past decisions which held that the motives behind a complete assignment would not be scrutinized so long as it was valid under state law." *Grassi*, 894 F.2d at 184. Further, "[b]ecause of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard; that is, the issue of whether the assignment was improperly or collusively made is to be resolved as a simple

question of fact." *Grassi*, 894 F.2d at 186; *accord Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 593, 598 (9th Cir. 1996) ("there is no more reason for federal courts to countenance destruction of jurisdiction by the use of straw parties than there is for them to countenance the creation of jurisdiction in that manner").   After *Kramer*, district courts may "inquire into the motives behind assignments destroying diversity." *Grassi*, 894 F.2d at 186; *Douglas Energy*, 585 F. Supp. at 548.[8]

Here, even if there were allegations that Nukote, Inc. assigned its claims to Nukote of Illinois, an examination of the motivations behind that assignment likely would show it was done to destroy diversity jurisdiction.   Indeed, there appears to be no other explanation for the creation of a new entity in a state in which no other related entities are currently operating within weeks of completing an entire reorganization of an entire family of companies through bankruptcy. The whole record indicates that any assignment of claims to Nukote of Illinois was "undertaken primarily to defeat this Court's exercise of diversity jurisdiction." *Ivanhoe Leasing Corp. v. Texaco, Inc.*, 791 F. Supp. 665, 668 (S.D. Tex. 1992).   As such, any assignment should be disregarded during the jurisdictional analysis.   *See Phoenix*, 22 F. Supp. at 286 (disregarding sham transaction for jurisdictional purposes).   "To do otherwise would make federal procedure a

---

[8] In the 19th century, the Supreme Court held that it would not invalidate a complete assignment that had the effect of destroying diversity. *Provident Savings Life Assur. Soc'y v. Ford*, 114 U.S. 635 (1885).   The Fifth Circuit, however, has stated that "the basic propositions for which *Provident* and its progeny stand have been abandoned." *Grassi*, 894 F.2d at 184.   Other federal courts and commentators share this opinion.   *See Attorneys Trust*, 93 F.3d at 599 (stating that the "Fifth Circuit's doubts [about the continuing validity of *Provident*] are well grounded); *Phoenix*, 22 F. Supp. at 286 (noting conflict between *Provident* and the subsequently-decided *Ex parte Nebraska*). *See generally* Caslin, *Provident Savings Life Assurance Soc'y v. Ford: 120 Years of Shenanigans Designed to Destroy Diversity Jurisdiction*, 42 Willamette L. Rev. 439, 483 (2006).   Additionally, *Provident* and its progeny have never addressed the context of *intercorporate assignments*, which are ripe for collusion and abuse and which allow the assignor to retain real interest and control over the assignee's litigation.   Indeed, in 1895, the Supreme Court suggested that intercorporate assignments between a parent and a subsidiary should be treated as *presumptively ineffective* for jurisdictional purposes.   *See Lehigh Mining*, 160 U.S. 327, 336-37, 16 S. Ct. 307, 40 L. Ed. 444 (1895); *Prudential Oil*, 546 F.2d at 475.

game in which the statutory rights of parties might be blocked by an adroit and cleverly designed maneuver of his adversary." *Id.*

## IV.   THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.

The amount in controversy, exclusive of interests and costs, surpasses the required jurisdictional threshold of $75,000. *See* 28 U.S.C. § 1441. Nukote of Illinois seeks damages of over $100 million. (App. at 9, Ex. 1, Compl. ¶ 21.)

## V.   REMOVAL IS TIMELY.

In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is being timely filed within 30 days after receipt of Plaintiff's Complaint. Defendants received a copy of the Complaint by electronic mail on February 26, 2010 and accepted service of the Complaint as of March 5, 2010.

## VI.   ALL DEFENDANTS CONSENT TO REMOVAL.

Both defendants Clover Holdings, Inc. and Clover Technologies Group, LLC have joined in this Notice of Removal.

## VII.   STATE COURT PLEADINGS ARE ATTACHED.

Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81.1 of the United States District Court for the Northern District of Texas, Defendants have attached as Attachment 1 an index of all documents filed in the state court, as Attachment 2 a copy of the docket sheet in the state court action, and as Attachment 3 a copy of all process, pleadings, and orders served upon Defendants and each document filed in the state court action.

## VIII.   NOTICE OF REMOVAL HAS BEEN GIVEN TO THE STATE COURT.

On the same day as the filing of this Notice of Removal, written notice of this filing is being provided to Nukote of Illinois, and a Notice of Removal to Federal Court along with a copy of this Notice of Removal is being filed with the 14th Judicial District Court of Dallas

County, Texas, as required by 28 U.S.C. 1446(d).  A copy of the Notice provided to the State Court is attached as Attachment 4.

*     *     *

WHEREFORE Defendants Clover Holdings, Inc. and Clover Technologies Group, LLC respectfully request that this case be removed to the United States District Court for the Northern District of Texas, Dallas Division, that this Court assume full jurisdiction of this action as provided by law, and that Defendants have such other and further relief to which they may show themselves justly entitled, at law or in equity.

Dated: March 24, 2010             Respectfully submitted,


  /s/ Michael P. Lynn
Michael P. Lynn
Texas Bar No. 12738500
mlynn@lynnllp.com
Mark E. Turk
Texas Bar No. 00786298
mturk@lynnllp.com
**LYNN TILLOTSON PINKER & COX, LLP**
2100 Ross Avenue
Suite 2700
Dallas TX 75201
Phone: (214) 981-3800
Fax:    (214) 981-3839

- *and –*

Jonathan S. Quinn
Illinois Bar No. 6200495
New York Bar No. 2034056
jquinn@reedsmith.com
Michael D. Richman
Illinois Bar No. 3124631
mdrichman@reedsmith.com
Max A. Stein
Illinois Bar No. 6275993
mstein@reedsmith.com
Leonard E. Hudson
Illinois Bar No. 6293044
lhudson@reedsmith.com
**REED SMITH LLP**
10 South Wacker Drive
Chicago, IL  60606
Phone:  (312) 207-1000
Fax:      (312) 207-6400
[*Pro Hac Vice* Applications Forthcoming]

*Attorneys for Defendants Clover Holdings, Inc. &*
*Clover Technologies Group, LLC*